ROB BONTA
Attorney General of California
JANET N. CHEN
Supervising Deputy Attorney General
JENNIFER BURNS
Deputy Attorney General
State Bar No. 312364
1300 I Street, Suite 125
P.O. Box 944255
Sacramento, CA 94244-2550
Telephone: (916) 210-6393
Fax: (916) 324-5205
E-mail: Jennifer.Burns@doj.ca.gov
*Attorneys for Defendants*
*E. Lopez, N. Franz, and R. Escobar*

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ALFRED DAVID SERNA,**<br>Plaintiff,<br>**v.**<br>**MADDEN, Warden, et al.,**<br>Defendants. | 3:22-cv-00841-JES-DEB<br>**MEMORANDUM OF POINTS AND AUTHORITIES**<br>Judge: The Honorable Daniel E. Butcher<br>Trial Date:<br>Action Filed: 6/06/2022 |

# TABLE OF CONTENTS


Page

Introduction ..... 1
Legal Standard ..... 2
Statement of Material Facts ..... 3
Argument ..... 7
I. Officers Franz, Lopez, and Escobar Were Not Deliberately Indifferent to Serna's Safety. ..... 7
A. Officers Franz, Lopez, and Escobar Reasonably Responded to the Risk to Serna's Safety. ..... 8
B. Officer Escobar Did Not Have a Realistic Opportunity to Intervene. ..... 11
II. Defendants Are Entitled to Qualified Immunity. ..... 11
Conclusion ..... 13

# TABLE OF AUTHORITIES

**Page**

CASES

*Adickes v. S.H. Kress & Co.*
398 U.S. 144 (1970)....................2

*Anderson v. Liberty Lobby*
477 U.S. 242 (1986)....................2

*Berg v. Kincheloe*
794 F.2d 457 (9th Cir. 1986)....................3, 10

*Celotex Corp. v. Catrett*
477 U.S. 317 (1986)....................2

*City & Cnty. of S.F. v. Sheehan*
575 U.S. 600 (2015)....................12

*Cunningham v. Gates*
229 F.3d 1271 (9th Cir. 2000)....................11

*Farmer v. Brennan*
511 U.S. 825 (1994)....................7, 8

*Hope v. Pelzer*
536 U.S. 730 (2002)....................12

*Hughes v. Rodriguez*
31 F.4th 1211 (9th Cir. 2022)....................3, 10

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*
475 U.S. 574 (1986)....................2

*Pearson v. Callahan*
555 U.S. 223 (2009)....................11, 12

*Reese v. Jefferson Sch. Dist. No. 14J*
208 F.3d 736 (9th Cir. 2000)....................2

*Robins v. Meecham*
60 F.3d 1436 (9th Cir. 1995)....................11

## TABLE OF AUTHORITIES
**(continued)**

**Page**

*S.E.C. v. Seaboard Corp.*
677 F.2d 1301 (9th Cir. 1982) .......... 2

*Saucier v. Katz*
533 U.S. 194 (2001) .......... 12

*Scott v. Harris*
550 U.S. 372 (2007) .......... 3, 9, 11

*Triton Energy Corp. v. Square D Co.*
68 F.3d 1216 (9th Cir. 1995) .......... 3

**CONSTITUTIONAL PROVISIONS**

United State Constitution
Eighth Amendment .......... 1, 7, 8

**COURT RULES**

Federal Rules of Civil Procedure
Rule 56(a) .......... 2

**OTHER AUTHORITIES**

2022 Department Operations Manual (DOM)
§ 51020.5 .......... 9

## INTRODUCTION

Defendants Officers Franz, Lopez, and Escobar bring this motion for summary judgment as to Plaintiff's sole claim for failure to protect under the Eighth Amendment.

On April 4, 2022, Plaintiff Alfred David Serna was involved in a one-on-one inmate fight with Lafita that lasted approximately one minute. Officers Franz, Lopez, and Escobar gave numerous verbal and audible commands to cease fighting, and get in a prone position on the ground. The fighting inmates did not obey the orders. Officers Franz and Lopez called for backup and pepper sprayed the fighting inmates six times before they separated. While separated, Serna disobeyed several orders and continuously tried to get closer to Lafita, who was complying with orders to get down. After roughly thirty seconds, Lafita suddenly picked up a nearby chair and struck Serna with the chair four times. Officers Franz and Lopez ordered Lafita to cease fighting numerous times and pepper sprayed him three times. A responding officer then arrived at the scene and pepper sprayed Lafita once more, ending the fight. Officer Escobar, who was in the control booth, ordered all inmates to get down, activated an alarm, and aimed a less-than-lethal 40mm launcher towards the fight. However, Officers Franz and Lopez obstructed his line of sight to the fight and Officer Escobar was unable to discharge the 40mm launcher without risk of injuring or incapacitating Officers Franz and Lopez.

The undisputed evidence—which includes surveillance and body worn camera video evidence—shows that Officers Franz, Lopez, and Escobar reasonably responded to the one-on-one inmate fight and that Officer Escobar had no realistic opportunity to intervene by shooting his 40mm launcher. Furthermore, Defendants are entitled to qualified immunity because no reasonable officer would believe Defendants' conduct violated the Eighth Amendment.

/ / /

## LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A judgment must be entered, "if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986).

The parties bear the same substantive burden of proof as would apply at a trial on the merits, including the plaintiff's burden to establish any element to his case. *Id.* at 252. The moving party bears the initial burden of establishing the basis of its motion and of identifying the portions of the declarations, pleadings, and discovery that demonstrate absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). For these purposes, "the material [the moving party] lodged must be viewed in the light most favorable to the opposing party." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982). More than a "metaphysical doubt" is required to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The burden then shifts to the non-moving party to establish, beyond the pleadings, that there is a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324. To successfully rebut a properly supported motion for summary judgment, the nonmoving party "must point to some facts in the record that demonstrate a genuine issue of material fact and, with all reasonable inferences made in the [nonmovant's] favor, could convince a reasonable jury to find for the [nonmoving party]." *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000) (citing Fed. R.

Civ. P. 56; *Celotex Corp.*, 477 U.S. at 323; *Liberty Lobby*, 477 U.S. at 249). The nonmoving party must present competent evidence showing that there are genuine issues of material fact and cannot rest solely on conclusory allegations. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). "The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Additionally, if the nonmoving party's version of facts is "blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *see also Hughes v. Rodriguez*, 31 F.4th 1211, 1218 (9th Cir. 2022) ("for purposes of ruling on a motion for summary judgment, a district court may properly view the facts in the light depicted by bodycam footage and its accompanying audio, to the extent the footage and audio *blatantly* contradict testimonial evidence").

**STATEMENT OF MATERIAL FACTS**

On April 4, 2022, inmates Serna and Lafita were incarcerated at RJD and assigned to Facility C, Housing Unit 13. (Defs.' Sep. Statement of Undisputed Material Facts (hereinafter "DUF" 1.) Housing Unit 13 is a two-level building with a "U" shaped dayroom surrounded by approximately 100 cells—50 on each level. (DUF 2.) A control booth is centrally located on the second floor about fifteen feet above the dayroom. (DUF 3.) The control booth is a secured location with windows on all three sides. (DUF 4.) There is a podium centrally located on the first floor facing the control booth and the two sides of the "U" shaped dayroom. (DUF 7.) Directly in front of the podium is a table where two floor officers are stationed. (DUF 7.) There are 16 cells and one shower on each floor behind the podium. (DUF 8.) On April 4, 2022, Lafita was assigned to cell 124 on the first floor, which is behind the podium on the left hand side. (DUF 9.)

/ / /

The morning of April 4, 2022, Officer Escobar was assigned to the control booth and tasked with observing the dayroom and maintaining the safety and security of the institution, inmates, and staff. (DUF 5.) Officer Escobar had access to three use of force options: (1) a Ruger mini-14 rifle; (2) a 40mm launcher; and (3) a large canister of MK-46 OC Spray. (DUF 17.) The mini-14 rifle is a "lethal" use of force option and the OC canister releases pepper spray and is designed for use with large crowds with multiple targets. (DUF 18.) The 40mm launcher is a "less than lethal" use of force option if used for targets at least 10 feet away that fires a single direct impact foam round or wood block round. (DUF 18.)

Officers Franz and Lopez were working as floor officers in Housing Unit 13 at the time of the fight between Serna and Lafita. (DUF 12.) No other custody staff were present in Housing Unit at the time of the fight. (DUF 12.) Floor officers carry pepper spray, with a maximum effective range of 12 feet, and a baton. (DUF 14.) Officers Franz and Lopez were at the table in front of the podium when the fight began. (DUF 15.)

On April 4, 2022, at 9:18:17 a.m., Serna approached Lafita's cell behind and to the left of the podium. (DUF 20-21.) At 9:18:23, Lafita exited his cell, bumped into Serna, and started striking Serna in the head and neck. (DUF 22.) At 9:18:26, Officers Franz and Lopez heard a scuff on the floor and turned towards Lafita's cell. (DUF 23, 25.) Serna pulled Lafita to the ground and the inmates continued fighting on the floor. (DUF 24.) At 9:18:28, Officer Franz ordered Plaintiff and Lafita to "get down."[1] (DUF 26.) The inmates ignored Officer Franz's order and continued fighting. (*See* DUF 28.)

/ / /

[1] A "get down" order is a command for inmates to immediately stop fighting and lie on the ground in a prone position. (DUF 27.) In the prone position, inmates cannot attack each other or staff, and the position also allows responding officers to take charge of a situation quickly and safely. (*Id.*) An inmate who remains standing despite being ordered to "get down" signifies that he is still participating in the incident, and presents a threat of injury to other inmates and staff. (*Id.*)

At 9:18:29, Officer Escobar—who was in the control booth—grabbed his 40mm launcher, while Officers Franz and Lopez pulled out their OC Pepper Spray canisters. (DUF 30.) Officers Franz and Lopez chose to use their pepper spray canisters because they are effective six to twelve feet away from the target and minimized the risk of harm to the inmates and staff members potentially caused by getting in between the fighting inmates. (DUF 34.)

Officer Franz ordered the inmates to "get down!" two more times. (DUF 32-33.) Serna and Lafita ignored her orders and continued fighting. (DUF 31-33.) At 9:18:33, Officer Franz pepper sprayed Serna and Lafita. (DUF 33.) Meanwhile, Officer Escobar grabbed the control booth microphone to the public address system and ordered: "Get down, everyone get down!" (DUF 35.)

Serna and Lafita ignored these orders and continued fighting. (DUF 35.) At 9:18:35, Officer Franz again ordered the inmates to "get down" and pepper sprayed them a second time. (DUF 36.) The inmates did not stop fighting. (DUF 36.) At 9:18:38, Officer Escobar activated an alarm in the control booth, approached the window closest to the fight, and aimed the 40mm launcher towards the fight.[2] (DUF 37.) At the same time, Officer Lopez pepper sprayed the inmates a third time and ordered them to "get down." (DUF 39.) Serna and Lafita again ignored the Officers' orders and continued fighting. (DUF 39.)

At 9:18:40, Officer Franz reported a "one on one" and called for backup. (DUF 40.) Officer Lopez again ordered Plaintiff and Lafita to "get down." (DUF 41.) Serna and Lafita ignored the order, and one second later Officer Franz ordered them to "get down." (DUF 41, 42.) The inmates continued fighting. (DUF 42.) At 9:18:45, Officer Franz pepper sprayed Serna and Lafita a fourth time. (DUF 43.) Serna and Lafita continued fighting. (DUF 43-44.)

[2] The alarm is a loud, repetitive sound that is heard inside the dayroom and outside the building. (DUF 38.) Inmates at RJD know that the alarm indicates they must get on the ground in a prone position. (*Id.*)

At 9:18:47, Officer Franz ordered the inmates to "get down" and pepper sprayed them a fifth time. (DUF 45.) The inmates ignored the order and continued fighting. (DUF 46.) Officer Lopez ordered the inmates to "get down." (DUF 47.) The inmates ignored the order. (DUF 47.) One second later, Officer Franz ordered the inmates to "get down" and pepper sprayed them a sixth time. (DUF 48.)

After the sixth spray, Serna and Lafita stopped fighting and separated for roughly 26 seconds. (DUF 49.) While separated, Serna continuously attempted to get up and move closer to Lafita despite Officers Franz and Lopez repeatedly ordering him to "stay down," "get down," "stay over there," or "get over there." (DUF 50-67.)

At 9:19:15, Lafita looked towards Officer Franz, who was preparing to put latex gloves on to restrain the inmates with handcuffs. (DUF 62, 68.) Officer Franz immediately told Officer Lopez: "Over here!" (DUF 69.) Then, Lafita suddenly stood up, grabbed a chair by the shower behind the podium, lifted it over his head, and advanced towards Serna. (DUF 70-71.) Officers Franz and Lopez ordered Lafita to "get down!" (DUF 71.) Lafita ignored the orders and struck Serna with the chair. (DUF 71.)

At 9:19:19, Officer Franz again ordered Lafita to "get down." (DUF 72.) Officers Franz and Lopez each pepper sprayed Lafita (for the seventh and eighth time). (DUF 72.) Lafita ignored the orders and struck Plaintiff with the chair two more times. (DUF 73-75.) Moments later, Officer Lopez ordered Lafita to "get down" and pepper sprayed him for the ninth time while Lafita again struck Serna with the chair. (DUF 76.) Then, a responding officer arrived and pepper sprayed Lafita in the face a tenth time and the fight ended. (DUF 77.)

For the entire duration of the fight, Officer Escobar aimed the 40mm launcher towards Serna and Lafita. (DUF 78.) Officers Franz and Lopez obstructed Officer Escobar's line of sight to the fight, preventing him from having a clear shot at either inmate while they were fighting. (DUF 79-80.) Firing the 40mm launcher could

have incapacitated or injured Officers Franz and Lopez, which would have left no officers on the floor available to quell the fight until responding officers arrived. (DUF 79-80.) Therefore, Officer Escobar did not fire the 40mm launcher. (DUF 80.)

## ARGUMENT

### I. OFFICERS FRANZ, LOPEZ, AND ESCOBAR WERE NOT DELIBERATELY INDIFFERENT TO SERNA'S SAFETY.

Based on the Officers' body worn camera footage and the prison's Audio Visual Surveillance System (AVSS) footage,[3] the undisputed material facts evince that Officers Franz, Lopez, and Escobar were not deliberately indifferent to a serious risk of harm to Serna's health and safety. Officers Franz and Lopez responded reasonably to the risk of harm to Serna because they immediately and continuously ordered Serna and Lafita to stop fighting and pepper sprayed them nine times. (DUF 26, 32, 33, 36, 39, 41-43, 45, 47, 48, 51, 53, 54, 56-59, 61, 64-67, 71, 72, 76.) Additionally, Officer Franz called for backup. (DUF 40.) Officer Escobar also responded reasonably by immediately activating an alarm, grabbing a 40mm launcher, and aiming it towards the fight. (DUF 35, 37, 78.)

Under the Eighth Amendment, prison officials have a duty to protect prisoners from the violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). However, not every injury suffered by a prisoner at the hands of another is a violation of a prisoner's constitutional rights. *Id.* at 834. "[A] prison official violates the Eighth Amendment only when two requirements are met." *Id.* First, the plaintiff must show that the alleged deprivation was "objectively, sufficiently serious." *Id.* Second, the plaintiff must establish that the defendants were "deliberately indifferent to a serious threat" to Plaintiff's safety. *Id.* The

[3] On March 2, 2023, Serna watched all video footage of the alleged incident for approximately one hour. (Burns Decl., Ex. B.) Serna was permitted to pause, rewind, and review the footage. (*Id.*) Serna also brought pen and paper to take notes of the video footage for future reference. (*Id.*) A CD-ROM of the video footage is being lodged with the Court.

defendants are not liable under the Eighth Amendment, unless they knew of and disregarded an excessive risk to the plaintiff's health or safety. *Id.* at 837.

### A. Officers Franz, Lopez, and Escobar Reasonably Responded to the Risk to Serna's Safety.

Officers Franz, Lopez, and Escobar are entitled to summary judgment in their favor because they did not disregard an excessive risk to Serna's safety. Rather, they reasonably responded to the fight between Serna and Lafita. A defendant is not liable "if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 at 844.

Officers Franz and Lopez's reasonable response is supported by uncontroverted AVSS and body worn camera footage. In less than thirty seconds, Officers Franz and Lopez ordered Serna and Lafita to stop fighting ten times, pepper sprayed them six times, and called for backup. (DUF 26, 32, 33, 36, 39-43, 45, 47, 48.) Serna and Lafita then separated for roughly 26 seconds. (DUF 49.) During that time, Officers Franz and Lopez ordered the inmates to remain separated and down on the floor 14 times because Serna repeatedly attempted to get up. (DUF 50-68.) When Lafita suddenly grabbed the chair and advanced towards Serna, Officers Franz and Lopez again immediately responded reasonably. In the 8 seconds Lafita struck Serna with a chair, Officers Franz and Lopez ordered Lafita to get down four times and pepper sprayed Lafita three times. (DUF 71, 72, 76.) Then, an officer responding to their call for backup arrived on scene, pepper sprayed Lafita in the face, and the fight stopped. (DUF 77.) Based on these actions, Officers Franz and Lopez did not disregard an excessive risk to Serna's safety. Rather, they heeded the risk and immediately responded by using appropriate force to quell the fight.

Officer Escobar also responded reasonably. Within a matter of seconds, Officer Escobar grabbed the 40mm launcher, ordered everyone to get down, activated an alarm, and aimed the 40mm launcher towards the fight. (DUF 30, 35,

37, 78.) However, as evidenced by his body worn camera footage, Officer Escobar did not have a clear shot of the inmates while they were fighting because Officers Lopez and Franz were in between him and the fight. (DUF 78-80); *see Scott*, 550 U.S. at 378-79. Additionally, a round from the 40mm launcher could have hit Officers Franz and Lopez, leaving them injured or incapacitated and unable to quell the fight. (DUF 80.) Therefore, Officer Escobar reasonably decided not to discharge the 40mm launcher.

These reasonable actions complied with CDCR's use of force policy. Pursuant to the Department of Operations Manual, "[w]henever possible, verbal persuasion should be attempted in an effort to mitigate the need for force." 2022 Department Operations Manual (DOM), § 51020.5.[4] Additionally, correctional officers' use of force options "do not have to be utilized in any particular sequence." *Id.* Rather, the correctional officer using force should choose the option they reasonably believe is sufficient based on several factors, including the level of potential injury, and the distance between the staff member and inmate. *Id.* Officers Franz, Lopez, and Escobar each verbally ordered Serna and Lafita to stop fighting in an effort to prevent the use of force. (DUF 27.) When the inmates ignored their lawful orders, Officers Franz and Lopez chose to use their pepper spray canisters because they are effective six to twelve feet away from the target and minimized the risk of harm to the inmates and staff members potentially caused by getting in between the fighting inmates. (DUF 34.) Officer Escobar chose to aim the less-than-lethal 40mm launcher towards the fight, but elected not to shoot because he did not have a clear shot of the fighting inmates. (DUF 80.)

Serna cannot genuinely dispute that Officers Franz, Lopez, and Escobar's responses were reasonable. Serna contends Officers Franz and Lopez should have

[4] Defendants invite the Court to judicially notice CDCR's Department Operations Manual, which is judicially noticeable. (Defs.' Request for Judicial Notice, Ex. A.)

utilized their batons, pepper sprayed more than once, and should have handcuffed Lafita.[5] (Pl. Dep. at 33:1-10, 64:11-66:25.) Serna asserts that Officer Escobar should have shot Lafita with the 40mm launcher. (Pl. Dep. at 66:16-25.) These arguments fail. "If the evidence only involves a dispute over the existence of arguably superior alternatives [to responding to the risk of harm], then the Supreme Court has indicated that the plaintiff has not met his burden and the case should not be presented to a jury." *Berg v. Kincheloe*, 794 F.2d 457, 462 (9th Cir. 1986) (cleaned up).

The undisputed video evidence supports a finding as a matter of law that Officers Franz, Lopez, and Escobar reasonably responded to the risk of harm the one-on-one inmate fight posed to Serna. *See Hughes*, 31 F.4th at 1218 ("[F]or purposes of ruling on a motion for summary judgment, a district court may properly view the facts in the light depicted by bodycam footage and its accompanying audio, to the extent the footage and audio *blatantly* contradict testimonial evidence."). Although Serna produced three inmate declarations stating that Officers Franz, Lopez, and Escobar took no action to stop the fight, (Pl. Dep. at 13:17-14:22, 16:20-17:16, 18:18-19:7), the video footage of the incident "blatantly contradict[s]" these declarations. *Hughes*, 31 F.4th at 1218. Therefore, these declarations do not create a genuine issue of material fact and the undisputed evidence shows that Officers Franz, Lopez, and Escobar were not deliberately indifferent to Serna's safety. *Hughes*, 31 F. 4th at 1218. The Court should grant summary judgment in their favor.

/ / /

/ / /

/ / /

[5] Serna believes Officers Franz and Lopez only pepper sprayed him and Lafita one time, but conceded that he was fighting for his life and focusing only on Lafita. (*See* Burns Decl., Ex. A (hereinafter "Pl. Dep.") at 61:3-25.) In any event, uncontroverted video evidence proves Officers Franz and Lopez pepper sprayed Serna and Lafita multiple times.

**B. Officer Escobar Did Not Have a Realistic Opportunity to Intervene.**

Officer Escobar is also entitled to summary judgment in his favor because he had no realistic opportunity to intervene in the fight between Serna and Lafita. A prisoner's rights can be violated by a prison official's deliberate indifference in failing to intervene. *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995). However, an officer can only be liable for failing to intervene if he had a realistic opportunity to intervene and failed to do so. *Cunningham v. Gates*, 229 F.3d 1271, 1289-90 (9th Cir. 2000). As indicated above, Officer Escobar could not discharge the 40mm launcher because he did not have a clear line of sight to either inmate while they were fighting. (DUF, 78-80); *see Scott*, 550 U.S. at 378-79 (finding no dispute of material fact where video evidence could not be controverted). Further, he could not discharge the 40mm launcher without risking injury to the only two officers on the floor—which could have increased the risk of harm to Serna by eliminating the on scene officers attempting to stop the fight. (DUF 78-80.) Officer Escobar, therefore, did not have a realistic opportunity to intervene by shooting Lafita and he is entitled to summary judgment in his favor.

**II. DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.**

Summary judgment should also be granted in Defendants' favor because they are entitled to qualified immunity.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). There are two primary inquiries in evaluating qualified immunity. First, "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right," and second, "whether the

right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* at 232 (citations omitted). "Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right." *Id.* (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

As discussed above, Officers Franz, Lopez, and Escobar reasonably responded to the inmate fight, and Officer Escobar had no realistic opportunity to intervene. As a result, they did not violate Serna's constitutional rights. Without a constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

Even if the Court finds constitutional deprivations, those violations are not clearly established. "An officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in his shoes would have understood that he was violating it,' meaning that 'existing precedent . . . placed the statutory or constitutional question beyond debate.'" *City & Cnty. of S.F. v. Sheehan*, 575 U.S. 600, 611 (2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). The key question here is whether the state of the law provided "fair warning" that Defendants' conduct was unconstitutional. *Hope v. Pelzer*, 536 U.S. 730, 740 (2002). The analysis must focus on "what [Defendants] reasonably understood [their] powers and responsibilities to be, when [they] acted, under clearly established standards." *Saucier*, 533 U.S. at 208.

In this case, it would not have been evident to a reasonable prison official that immediately and continuously ordering inmates to stop fighting and pepper spraying fighting inmates nine times could constitute a failure to protect an inmate engaged in the fight. It also would not have been evident to a reasonable prison official that immediately ordering inmates to stop fighting, activating an alarm, and aiming a 40mm launcher towards a fight but not shooting because there was no clear line of sight to the fighting inmates would constitute a failure to protect.

Accordingly, Defendants are entitled to qualified immunity because it would not have been clear to a reasonable prison official that their conduct was unlawful.

**CONCLUSION**

The undisputed material video evidence supports a summary judgment ruling in Defendants' favor. The video evidence shows that Officers Franz and Lopez reasonably responded by immediately and continuously ordering Serna and Lafita to stop fighting, calling for backup, and pepper spraying the fighting inmates nine times. Likewise, video evidence shows that Officer Escobar reasonably responded by immediately ordering the inmates to stop fighting, activating an alarm, and aiming his 40mm launcher towards the fight for its entire duration. However, Officer Escobar did not have a realistic opportunity to intervene because Officers Franz and Lopez obstructed his line of sight to the fight. Even further, it would not have been clear to a reasonable officer that these actions were unlawful, and therefore, Defendants are entitled to qualified immunity. The Court should grant Defendants' motion for summary judgment.

Dated: April 3, 2023

Respectfully submitted,

ROB BONTA
Attorney General of California
JANET N. CHEN
Supervising Deputy Attorney General

/s/ ***Jennifer Burns***

JENNIFER BURNS
Deputy Attorney General
*Attorneys for Defendants*
*E. Lopez, N. Franz, and R. Escobar*

SD2022304575
37051778.docx