# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALFRED DAVID SERNA,<br>CDCR #E-25219,<br><br>             Plaintiff,<br><br>vs.<br><br>ESCOBAR, Correctional Officer;<br>C. LOPEZ, Correctional Officer;<br>FRANZ, Correctional Officer,<br><br>             Defendants. | Case No.: 3:22-CV-00841-JES-DEB<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 56**<br><br>[ECF No. 31] |

Plaintiff Alfred David Serna ("Plaintiff" or "Serna"), an inmate housed at the Richard J. Donovan Correctional Facility ("RJD"), filed this civil rights action pursuant to 42 U.S.C. § 1983 alleging that Defendants were deliberately indifferent to a serious

threat to Serna's safety in violation of his Eighth Amendment rights. *See generally* ECF No. 1, Compl.[1]

Before the Court is Defendants Escobar, Lopez, and Franz's Motion for Summary Judgment. *See* ECF No. 31. Plaintiff filed an Opposition to Defendants' Motion, *see* ECF No. 48, and Defendants filed a Reply, *see* ECF No. 49.

Having reviewed the Parties' submissions and the applicable law, the Court **GRANTS** Defendants' Motion for Summary Judgment and **DIRECTS** the Clerk of the Court to enter judgment in favor of Defendants and to close the case.

## I.   PROCEDURAL BACKGROUND

On June 6, 2022, Plaintiff filed a Complaint under 42 U.S.C. § 1983 alleging that Defendants violated his Eighth Amendment rights when they failed to protect him from an attack from another inmate. *See* Compl., ECF No. 1 at 3-5.

On August 12, 2022, United States District Judge Janis L. Sammartino screened his Complaint pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A, dismissed his claims against Defendant Madden, and gave him the option to file an amended complaint or proceed on his Eighth Amendment failure to protect claim against the remaining Defendants. *See* ECF No. 6. Plaintiff notified the Court of his intention to proceed with his Eighth Amendment claim only against Defendants Escobar, Lopez, and Franz and the Court directed U.S. Marshal service pursuant to 28 U.S.C. § 1915(d) and Fed. R. Civ. P. 4(c)(3) as to these named defendants. *See* ECF Nos. 7, 8. Defendants filed an Answer to the Complaint on November 29, 2022. *See* ECF No. 15. The matter was transferred to this Court on March 22, 2023. *See* ECF No. 29.

---

[1] Throughout this Order and for ease of consistency and reference, the Court will cite to each document in the record using both the number assigned to the document and the page number automatically generated by its Case Management/Electronic Case File system ("ECF").

On April 3, 2023, Defendants Lopez, Franz, and Escobar ("Defendants")[2] filed a Motion for Summary Judgment. *See* ECF No. 31. The Court notified Plaintiff of the requirements for opposing summary judgment pursuant to *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc). *See* ECF No. 35. United States Magistrate Judge Daniel E. Butcher granted Plaintiff two extensions of time to file his Opposition which he filed on August 23, 2023. *See* ECF Nos. 42, 47, 48. Defendants filed their Reply on September 18, 2023. *See* ECF No. 49.

## II.    FACTUAL BACKGROUND

### A.    Plaintiff's Factual Allegations

On April 4, 2022, Serna was assaulted by Inmate Lafita ("Lafita") "causing stab wounds in face and arm." Compl. at 3. Both Serna and Lafita were "sprayed in [the] face" causing both to become prone on the floor. *Id.* One minute later, Lafita "got up and grabbed an ADA chair" and hit Serna five times in the back of the head. *Id.*

Defendant Correctional Officer Escobar ("Escobar") was in the control booth and was in charge of controlling cell doors and was the "gunner in case a situation gets out of control." *Id.* Lafita got up from the floor "after being ordered to get down." *Id.*

Defendants Correctional Officer Lopez ("Lopez") and Franz ("Franz") were floor officers and they both [used their pepper spray] "one time during the first attack" by Lafita and a second time when Lafita "got up [and] walked over to Plaintiff with an ADA metal/plastic chair and repeatedly hit him in the head [and] back." *Id.*

Plaintiff alleges he would not have been injured "if the gunner [Correctional Officer] Escober" had shot Latifa with at least one shot. *Id.* at 4. As he was being attacked by Lafita with the chair, Plaintiff alleges Defendants Franz and Lopez "were

---

[2] In this Order, "Defendants" refers collectively to the three defendants who are the subjects of the instant Motion for Summary Judgment—Lopez, Franz, and Escobar—and not other previously dismissed defendants, unless otherwise noted.

standing [two] feet away and watched" but did not "utilize their side baton, instead they froze until other officers responded." *Id.* Plaintiff alleges that all three officers "knew that there was a substantial risk that Plaintiff would be seriously injured" but they "did nothing to stop the attack on Plaintiff." *Id.* As a result, Plaintiff has "injuries to eye, head, back, and legs" that still "are affecting Plaintiff daily." *Id.*

Plaintiff seeks declaratory relief, $500,000 in compensatory damages, $500,000 in punitive damages and other costs "the Court deems just and proper." *Id.* at 7.

### B.   Defendants' Claims and Evidence

On April 4, 2022, Serna and Lafita were both housed in Facility C, Housing Unit 13 at RJD. *See* Burns Decl., ECF No. 31-4, Ex. A (hereinafter "Pl.'s Depo.") at 26:14-22; Escobar Decl., ECF No. 31-5, at ¶ 6. Facility C, Housing Unit 13 is a "two-level building," which has a "U-shaped dayroom surrounded by approximately 100 cells – 50 on each level." Escobar Decl. at ¶ 2. The dayroom contains three sections, A, B and C, and the control booth is "approximately fifteen feet above the ground, in the middle of the dayroom, facing the dayroom and the surrounding cells." *Id.* The control booth "is a secured location and has windows on all three sides so that the control booth officer can observe the entire dayroom." *Id.*

On this day, Escobar was "assigned to RJD as a control booth officer in Facility C, Housing Unit 13" and there is "only one officer assigned to the control booth at a time." *Id.* at ¶¶ 1, 3. His duties included "observing the dayroom and maintaining the safety and security of the institution, the inmates, and the staff." *Id.* at ¶ 3.

In the middle of the first floor, there is a podium "facing the control booth and flanked by the two sides of the U-shaped dayroom." *Id.* at ¶ 2. Immediately in front of the podium is a "table where two floor officers are stationed" and there are "approximately 16 cells and one shower on each floor behind the podium." *Id.* at ¶ 3. Latifa was assigned to Cell 124 which is on the first floor of Housing Unit 13 and the podium where the floor officers are assigned "is in between Cell 124 and the control booth." *Id.* at ¶ 6.

|   |   |
|---|---|
| 1 | Lopez and Franz were both "Housing Unit 13 floor officer[s]" whose duties |
| 2 | included "monitoring inmate activities and maintaining the safety and security of the |
| 3 | institution, inmates, and the staff." Franz Decl., ECF No. 31-6 at ¶ 3; Lopez Decl., ECF |
| 4 | No. 31-7 at ¶ 3. They were the only "two custody staff on the floor in Housing 13" on the |
| 5 | day of the attack. *Id.* at ¶ 6; *Id.* at ¶ 6. Both officers had "access to two use-of-force |
| 6 | options: (1) Oleoresin Capsicum (OC) spray, or pepper spray, with an effective range of |
| 7 | between six and twelve feet; and (2) a hand-held baton." *Id.* at ¶ 4; *Id.* at ¶ 4. As the |
| 8 | control booth officer, Escobar "had access to three use-of-force options: (1) a Ruger |
| 9 | mini-14 rifle; (2) a 40mm launcher; and (3) a large canister of MK-46 OC spray designed |
| 10 | for use in large areas only." Escobar Decl. at ¶ 4. |
| 11 | At 9:18 a.m., Serna walked towards Lafita's cell and arrived at 9:18:17 a.m. *See* |
| 12 | Gaither Decl., ECF NO. 31-8, Ex. A, Video Title HU 13 Podium 1-2022-04-04 ("AVSS |
| 13 | Podium 1"). A few seconds later, Lafita exits his cell, appears to physically bump into |
| 14 | Serna and starts striking Serna in the head and neck region. *See id.* |
| 15 | Franz, who was standing at the table in front of the podium facing the dayroom, |
| 16 | and Lopez, who was sitting at the table in front of the podium, both "heard a scuff on the |
| 17 | ground." Franz Decl. at ¶ 6; Lopez Decl. at ¶ 6. At approximately 9:18 a.m. on April 4, |
| 18 | 2022, Escobar, Lopez, and Franz "observed inmates Serna and Lafita physically striking |
| 19 | each other in front of cell 124." Escobar Decl. at ¶ 7; Franz Decl. at ¶ 6; Lopez Decl. at ¶ |
| 20 | 6. |
| 21 | Franz and Lopez got up from the table and Franz ordered Serna and Lafita to "Hey, |
| 22 | get down." Gainther Decl., Ex. A., Video Title C 12 FLR 2 CO42013-2022-04-04, |
| 23 | Correctional Officer N. Franz Body Warn Camera ("Franz BWC"); C Spare 04 |
| 24 | CO40004-2022-04-04, ("Lopez BWC"). A "get down" order is a command for inmates to |
| 25 | immediately stop fighting and lie on the ground in a prone position." Franz Decl. at ¶ 9. |
| 26 | Lafita assumed a kneeling position over Serna and struck him in the stomach and torso. |
| 27 | *See* Gainther Decl., Franz BWC; Lopez BWC. Serna grabbed Lafita's shirt as Lafita was |
| 28 | striking Serna's torso. *See* Gainther Decl., AVSS Podium 1. |

5

Escobar "[i]mmediately after observing inmates Serna and Lafita fighting," grabbed the "40mm launcher, ordered everyone in the dayroom to 'get down' over the public address system, activated an alarm, and aimed the 40mm launcher towards the fight." Escober Decl. at ¶ 10. At approximately the same time, Lopez "ordered inmates Serna and Lafita to 'get down' three times, and pepper sprayed once." Lopez Decl. at ¶ 9. Franz "ordered inmates Serna and Lafita to 'get down' several times with no effect, pepper sprayed them five times, and called for backup." Franz Decl. at ¶ 9.

The "pepper spray had the intended effect, and inmates Serna and Lafita separated, ceased fighting, and got in the prone position." Lopez Decl. at ¶ 10; Franz Decl. at ¶ 10. Both Franz and Lopez saw that Serna "made several attempts to get up from the prone position" and multiple times ordered him to "get down" or "stay down." *Id.* Serna "eventually complied." *Id.*

The fight "appeared to be over" and Franz was "preparing to put on latex gloves to handcuff the inmates, when Lafita quickly made eye contact with [Franz] and grabbed a nearby chair." Franz Decl. at ¶ 11. Franz "immediately instructed [Lopez] 'over here' three times and gestured towards Lafita." *Id.* "At that time, [Lopez] observed inmate Lafita strike inmate Serna with the chair multiple times." Lopez Decl. at ¶ 12. Both Franz and Lopez told Lafita to "get down" and pepper sprayed him. Franz Decl. at ¶ 12; Lopez Decl. at ¶ 12. However, Lafita "ignored" their orders and "continued striking Serna with the chair." *Id.* Both Franz and Lopez "put away" their pepper spray canister and got out their "hand-held baton." *Id.* However, neither officer used their baton because a "responding officer arrived and pepper sprayed Lafita" and the "fight then ended." *Id.*

Escobar "aimed the 40mm launcher towards inmate Serna and Lafita for the entire duration of the fight." Escobar Decl. at ¶ 11. However, Franz and Lopez were "in between [Escobar] and inmates Serna and Lafita, which blocked a clear line of sight to the fight." *Id.* Escobar did not fire the launcher "because [he] did not have a clear shot at either inmate while they were fighting and, therefore, firing the 40mm launcher could have incapacitated or injured the floor officers." *Id.*

"After the fight ended, [Franz and Lopez] learned that inmate Lafita was using an inmate manufactured weapon, which was not apparent to [them] at any time during the fight, to stab inmate Serna." Franz Decl. at ¶ 13; Lopez Decl. at ¶ 13. Escobar also did not "observe an inmate manufactured weapon being used in the fight." Escobar Decl. at ¶ 12.

### III.   LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material when it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The initial burden of establishing the absence of any genuine issues of material fact falls on the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the non-moving party's case; or (2) by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See id.* at 322–23. In such cases, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*

Once the moving party has satisfied its initial burden, the non-moving party cannot rest on the mere allegations or denials of its pleading. The non-moving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. The non-moving party may meet this requirement by presenting evidence from which a reasonable jury could find in its favor, viewing the record as a whole, in light of the evidentiary burden the law places on that party. *See Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221–22 (9th Cir. 1995). In determining whether there are any genuine issues of material fact, the court must "view[]

the evidence in the light most favorable to the nonmoving party." *Fontana v. Haskin*, 262 F.3d 871, 876 (9th Cir. 2001) (citation omitted).

## IV.   DISCUSSION

Defendants move for summary judgment on the ground that they were not deliberately indifferent to a serious threat to Serna's safety in violation of his Eighth Amendment rights.[3] *See* Defs.' Memo. of P&As at 11-15. Defendants point to the "Officers' body worn camera footage and the prison's Audio-Visual Surveillance System (AVSS) footage" to demonstrate that none of the named Defendants were deliberately different to Plaintiff's safety when they responded to the incident that occurred between Serna and Lafita. *Id.* at 11. In addition, Defendants argue that they are entitled to qualified immunity. *See id.* at 11-13.

### A.   Eighth Amendment Failure to Protect

"'[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners.'" *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quoting *Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988)). "The failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation when: (1) the deprivation is 'objectively, sufficiently serious' and (2) the prison officials had a 'sufficiently culpable state of mind,' acting with deliberate indifference." *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005) (quoting *Farmer*, 511 U.S. at 834). The second prong of this test is subjective, and "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *See Farmer*, 511 U.S. at 837. "'Deliberate indifference entails something more than mere negligence but is satisfied by something less than acts or omissions for the very purpose of causing

---

[3] Plaintiff appears to attempt to raise an Eighth Amendment excessive force claim, for the first time, in his Opposition. However, Plaintiff did not allege an Eighth Amendment excessive force claim in this action and thus, this argument is not relevant to this Motion.

harm or with knowledge that harm will result.'" *Hearns*, 413 F.3d at 1040 (quoting *Farmer*, 511 U.S. at 835) (internal alterations omitted)). "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under [the Supreme Court's] cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

Thus, "deliberate indifference" entails something more than mere negligence, but may be satisfied with proof of something less than acts or omissions "for the very purpose of causing harm," or that a particular official "acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842. "Whether a prison official had the requisite knowledge of a substantial risk" may be inferred if the prisoner produces evidence sufficient to show that the risk was "obvious." *Id.*

As an initial matter, it should be noted that there is no allegation, or any evidence in the record to support an allegation, that any of the named Defendants were aware that Lafita intended to attack or cause Plaintiff harm prior to the incident. There is also no evidence that Defendants failed to respond to the attack by Lafita but instead Plaintiff argues that Defendants "observed inmate Lafita attempting to murder Plaintiff and fail[ed] to use the authorized and available level of force and use of force options to effectively intervene in inmate Lafita's attempt to murder Plaintiff." Pl.'s Opp'n at 3.

Here, as noted above, the interaction between Serna and Lafita, as well as the response by Officers to this interaction, has been documented by footage from the Officer's BWC and other cameras throughout the facility. The Court must view the record in the light most favorable to Plaintiff as the non-moving party "so long as [Plaintiff's] version on the facts is not blatantly contradicted by the video [or audio] evidence." *Vos v. City of Newport Beach,* 892 F.3d 1024, 1028 (9th Cir. 2018) (citation omitted). However, "[t]he mere existence of video footage of the incident does not

foreclose a genuine factual dispute as to the reasonable inferences that can be drawn from that footage." *Id.*

The video footage provided is not disputed by Plaintiff and provides some clear footage of the entire incident. On April 4, 2022, at approximately 9:18 a.m., Serna is seen walking across the dayroom and arriving at the door of Lafita's cell. *See* ECF No. 31-8, Ex. A, Video Title HU 13 Podium 1-2022-04-04 (AVSS Podium 1). Just a few seconds later, Lafita comes out of his cell, bumps into Serna and almost immediately begins attacking Serna. *See id.* Defendant Lopez is seated at a table while Defendant Franz is standing at the same table, but neither are facing the view of Lafita's cell. *See id.* As Lafita begins attacking Serna, both Defendants turn their head towards Serna and Lafita and begin approaching Serna and Lafita. *See id.*

Lafita pulls Serna to the ground as Franz and Lopez approach and is continually striking Serna on the head. *See id.* At 9:18:29, Franz and Lopez both pull out their pepper spray canisters. *See id.* Four seconds later, Franz sprays both Serna and Lafita with one burst of pepper spray but Lafita continued attacking Serna. *See id.* It can also be observed that Franz appears to speak into her radio and in her declaration indicates she was calling "for backup." *See* id; Franz Decl. at ¶ 9. Both Franz and Lopez maintain that they repeatedly ordered both inmates to "get down" and remain prone but both ignored the orders. *See* Franz Decl. at ¶ 9; Lopez Decl. at ¶ 9. However, it appears that Serna was already down during most of the attack. *See* AVSS Podium 1. Franz sprayed both inmates for a second time a few seconds later but Lafita continued attacking Serna. *See id.* At 9:18:34, Escobar spoke over the public address system in the tower and ordered "get down, everyone get down." *See* ECF No. 31-8, Ex. A, C 13 CNTRL CO4201102-04-04 (Correctional Officer R. Escobar Body Worn Camera (BWC)). Escobar aimed the 40mm launcher towards the direction of Serna and Lafita but did not fire the launcher. *See id.* At this same time, Lopez sprays both Serna and Lafita a third time with pepper spray but that did not deter Lafita from continuing the attack. *See* AVSS Podium 1. A few seconds later, Lopez sprays both inmates for a fourth time and Lafita then stands up while Serna

grabs Lafita's shirt. *See id.* Lafita walks backward and Serna and Lafita are ultimately separated. *See id.* Lopez aims his pepper spray towards Serna while Franz is attempting to put on latex gloves "to handcuff the inmates." *See id.*; Franz Decl. at ¶ 11.

As Franz was attempting to put the gloves on, Lafita picks up a shower chair, approaches Serna, lifts it above his head and hits Serna on the head multiple times. *See* AVSS Podium 1. As he is beating Serna, both Lopez and Franz again spray pepper spray at Lafita and Serna. *See id.* Franz then puts away her pepper spray and removes her baton from her belt. *See id.* A few seconds later, Lopez also puts away his pepper spray and removes his baton. *See id.* The video then shows several officers responding to the incident, and one sprays Lafita with pepper spray in the face which ends the attack. *See id.* Escobar has aimed his 40mm launcher towards Serna and Lafita during the duration of the attack but attests that he "did not have a clear shot at either inmate" and if he had fired his launcher it "could have incapacitated or injured the floor officers." *See* Escobar BWC; Escobar Decl. at ¶ 11.

Defendants do not dispute Serna's claim that during the attack Lafita used a seven inch long "inmate manufactured weapon/knife/shank that was sharpened to a point" to stab Serna repeatedly in the head. Pl.'s Opp'n at 7. However, Defendants all attest that "[a]fter the fight ended, [they] learned that inmate Lafita was using an inmate manufactured weapon" but "[a]t no point during the fight did [they] observe an inmate manufactured weapon being used in the fight." Escobar Decl., at ¶ 12; Franz Decl. at ¶ 13; Lopez Decl. at ¶ 13.

A careful review of the video footage of the incident indicates that from the time Lafita made initial body contact with Serna to the end of the attack when the outside officer sprayed Lafita in the face with pepper spray was approximately one (1) minute. *See* AVSS Podium 1.

Serna argues that Defendants were deliberately indifferent because the "use-of-force options chos[en] by Defendants Franz and Lopez were wholly inappropriate to effectively intervene and to protect Plaintiff given the character and the nature of the

lethal attack" by Lafita. *See* Pl.'s Opp'n at 8. In addition, Serna argues there was a "complete failure of Defendant Escobar to use any of the use-of-force options available" for him to use to prevent the "serious bodily injury" by Lafita on Serna. *Id.*

      Here, the Court finds that Defendants are entitled to summary judgment on Serna's failure to protect claim because they have met their burden to demonstrate there is no genuine issue of material fact that any of the named Defendants were deliberately indifferent to an excessive risk to Serna's health or safety. *See Farmer*, 511 U.S. at 834. A review of the video of the incident between Serna and Lafita undeniably shows that Serna was brutally attacked by Lafita. As Serna notes in his Opposition, while the Defendants refer to this entire incident as a fight between these two inmates, the video shows only Lafita as the aggressor. *See* Pl.'s Opp'n at 4. Defendants appear to concede this point in their Reply by agreeing to use the word "incident" instead of "fight." Defs.' Reply at 3, fn. 1. However, Defendants are correct that whether it was a fight or a one-sided attack, "Defendants owed the same duty to protect Serna." *Id.* at 3 (citing *Farmer*, 511 U.S. at 833).

      "A prison official's deliberate indifference may be established through an 'inference from circumstantial evidence' or 'from the very fact that the risk was obvious.'" *Cortez v. Skol*, 776 F.3d 1046, 1050 (9th Cir. 2015) (quoting *Farmer*, 511 U.S. at 842). As stated above, neither negligence nor gross negligence constitutes deliberate indifference. *Farmer*, 511 U.S. at 835-36 & n.4. The BWC and dayroom videos show that neither Franz nor Lopez were facing Lafita's cell at the time the attack started and could not have seen which inmate instigated the incident. However, the video does show that almost immediately after the attack began, both Franz and Lopez approached both inmates and within a few seconds sprayed both inmates with pepper spray, ordered them to lay prone, and called for backup from other officers over the radio. The BWC video of Escobar also shows that he was in the tower when the attack started, he called out for all inmates in the dayroom to get down and aimed his 440mm launcher towards Serna and Lafita. The evidence demonstrates that Defendants did attempt to stop

the attack and while Serna undeniably suffered injuries from this attack, his claims that they were just "standing [two] feet away and watch[ing]" while he was being attacked is directly contradicted by the undisputed video evidence. Compl. at 4. Moreover, Serna offers no evidence to dispute Escobar's sworn testimony in his declaration that he was unable to fire any weapon because he did not have a clear shot at either Serna or Lafita.

Moreover, there is no evidence in the record that any of the named Defendants were aware that there was even the possibility that Serna was going to be attacked by Lafita. Instead, Serna's Opposition focuses on an argument that Franz and Lopez had not received "training concerning CDCR policies and procedures on inmate-on-inmate attacks" and had only been employed by the CDCR for sixteen (16) months at the time the attack occurred. Pl.'s Opp'n at 12-13. As to Escobar, Plaintiff argues that he had purportedly received no "training concerning CDCR policies and procedures as a control officer, no training for how to respond to a Code 1 (one on one incident)." *Id.* at 11. Defendants argue in response that their "training records do not create a genuine dispute of material fact." Defs.' Reply at 4. The Court agrees. At most, taking the facts in the light most favorable to Serna, this argument could raise an issue of negligence as to how Defendants responded to the attack by Lafita but does not demonstrate that they were acting with deliberate indifference in the manner in which they responded to the attack. *See Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998) ("Mere negligence is not sufficient to establish liability.")

The evidence in the record shows that Defendants immediately responded to the incident between Serna and Lafita as they became aware of it, they used force by spraying both inmates several times with pepper spray, ordered all inmates to get down, and called for additional help from other officers who responded within a minute of the beginning of the incident. While Serna argues more should have been done to stop the second part of the attack by Lafita, there is no evidence in the record to show that any of the named Defendants acted with deliberate indifference towards Serna. Thus, the Court **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's Eighth

Amendment failure to protect claim.

B. **Qualified Immunity**

Defendants move for summary judgment on qualified immunity grounds. Specifically, Defendants argue that they did not violate Serna's constitutional rights and even if the Court "finds constitutional deprivations, those violations are not clearly established." Defs. Memo of P&As at 17.

"Government officials enjoy qualified immunity from civil damages unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Jeffers v. Gomez*, 267 F.3d 895, 910 (9th Cir. 2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When presented with a qualified immunity defense, the central questions for the court are: (1) whether the facts alleged, taken in the light most favorable to Plaintiff, demonstrate that the Defendants conduct violated a statutory or constitutional right; and (2) whether the right at issue was "clearly established" at the time it is alleged to have been violated. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Although *Saucier* originally required the Court to answer these questions in order, the U.S. Supreme Court has since held that "while the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

If the Court finds that Plaintiff's allegations do not make out a statutory or constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201. Similarly, if the Court determines that the right at issue was not clearly established at the time of the defendant's alleged misconduct, the court may end further inquiries concerning qualified immunity without determining whether the allegations in fact make out a statutory or constitutional violation. *Pearson*, 555 U.S. at 236-37.

Here, the Court has found that there is no genuine dispute of material fact regarding Plaintiff's Eighth Amendment claims and thus, no qualified immunity analysis is necessary. *See, e.g.*, *Aguilera v. Baca*, 510 F.3d 1161, 1167, 1174 (9th Cir. 2007)

(noting that if no constitutional violation occurred the court need not decide whether qualified immunity applies).

## V.   CONCLUSION

Accordingly, the Court **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's Eighth Amendment claims pursuant to Federal Rules of Civil Procedure 56. ECF No. 31. The Clerk of Court is directed to enter judgment on behalf of all Defendants and close the file.

**IT IS SO ORDERED**.

Dated:  October 13, 2023

Honorable James E. Simmons, Jr.
Unites States District Judge